(Opinion published 56 N. W. Rep. 1113.)

---

DANIEL L. BELL *vs.* WILLIAM FORRESTAL *et al.*

Argued Nov. 15, 1893.   Reversed Dec. 7, 1893.

No. 8554.

**Sureties released by extension of time of payment.**

D. and others were liable as sureties for an indebtedness on account due and payable from F. to B. As collateral security for part of the account, B. accepted from F. the joint negotiable promissory note of F. and a third person, payable in sixty days, which, without the knowledge or consent of the sureties, and without any express authority from F., he immediately indorsed and sold, realizing the money on it, which he credited on F.'s account. But, the note not having been paid at maturity by the makers, B., as indorser, was compelled to take it up.

*Held,* that the sureties were released to the extent of the amount of the note, because the act of B. in disposing of the note operated, at least, as a conditional payment on the account, which suspended all right of action on it, to that amount, until the maturity of the note, and until B., as indorser, had taken it up.

Appeal by defendants, James G. Donnelly, George Mitsch and Terrence Kenny, from an order of the District Court of Ramsey County, *William Louis Kelly,* J., made March 20, 1893, denying their motion for a new trial.

The defendants, William Forrestal and James Forrestal, contracted with the City of St. Paul to construct certain sewers in University Avenue and other streets in the western part of that city. The other defendants were sureties on their bond to the City for $107,000 dated October 31, 1889, conditioned that if the Forrestals should pay all just claims for work done and materials furnished and perform the contract, the bond should be void, otherwise of force. The plaintiff, Daniel L. Bell, sold them cement used in the work to the value of $7,628.15 and claimed a balance unpaid of $6,151.95 and brought this action on the bond to recover that amount. The sureties answered that on June 24, 1890, plaintiff was paid $2,500 by check on Germania Bank. They further answered that plaintiff, without their knowledge or consent, extended the time of payment by a valid agreement with the Forrestals, whereby the sureties were released. The evidence showed that on August 18, 1890, Forrestal Bros. gave plaintiff their promissory note for $2,500 payable sixty days thereafter. That he on the same day indorsed it and had it discounted at the Bank of Minnesota and gave the Forrestals credit for the money. When the note fell due it was not paid, but was protested and notice given him, and he paid it and charged the Forrestals with the amount. The issues were tried December 16, 1892. The jury returned a verdict for the plaintiff and assessed his damages at the full amount he claimed with interest. The sureties moved for a new trial, but were refused and they appeal.

*John B. & E. P. Sanborn* and *Stevens, O'Brien & Glenn*, for appellants.

Whatever the agreement of the parties was, the act of discounting the note placed it beyond the control of Bell and thereby discharged the sureties to that extent; because, while he was unable to surrender the note, he could not recover against the Forrestals on his account.

If the agreement between the parties was that the note should be taken as collateral, then the discounting of it was a conversion by the plaintiff and his sureties are discharged *pro tanto*. *Wheaton* v. *Wheeler*, 27 Minn. 464; Brandt, Suretys. § 345; *Mayhew* v. *Boyd*, 5 Md. 102.

*McLaughlin & Morrison*, for respondent.

The note, not having been received as payment nor as evidence of the account, did not operate directly upon it, and it being the note of the debtor, it was simply accommodation paper. The time for the payment of the account was not extended. The contrary was expressly agreed. The right to proceed against the surety was expressly reserved, therefore, there was no consideration for the paper. *Shaw* v. *First A. R. P. Church*, 39 Pa. St. 226; *Morse* v. *Huntington*, 40 Vt. 488.

The discounting of the note at the Bank did not, in legal effect, release the sureties. *Weller* v. *Ransom*, 34 Mo. 362; *Wyke* v. *Rogers*, 1 De Gex, MacN. & G. 408; *Frisbie* v. *Larned*, 21 Wend. 449; *Fellows* v. *Prentiss*, 3 Denio, 512; *Hutchinson* v. *Moody*, 18 Me. 393.

When the right to proceed against the surety is reserved the surety is not released, even if time was given the principal debtor. *Claggett* v. *Salmon*, 5 Gill & J. 314; *Jones* v. *Sarchett*, 61 Ia. 520; *Calvo* v. *Davies*, 73 N. Y. 211; *National Bank of N.* v. *Bigler*, 83 N. Y. 51.

MITCHELL, J. Upon entering into a contract with the city of St. Paul for the construction of a sewer, the defendant Forrestal, the contractor, as principal, and the other defendants as sureties, executed a bond to the city in accordance with the provisions of Sp. Laws 1889, ch. 360, which inured to the benefit of all who performed work or furnished material in the execution of the contract. *Sepp* v. *McCann*, 47 Minn. 364, (50 N. W. 246.) This is an action on the bond to recover for material furnished by plaintiff to the defendant Forrestal in the execution of the contract.

The only matters in issue were—*First*, how much had been paid on the claim by Forrestal; and, *Second*, whether certain acts of the plaintiff had not, in part, released the sureties from their liability on the bond.

1. It appeared that, when Forrestal made a certain payment to plaintiff, he was also indebted to the latter for other material furnished in the execution of another contract with the city. The defendants claim that this payment was made generally on all of Forrestal's indebtedness to plaintiff, as one indivisible account, and should be so applied, while plaintiff's contention is that the payment

was made and accepted under an express agreement of the parties that it should be first applied to pay in full the amount due for material for the other job, and the remainder only applied on the indebtedness for material for this sewer. All we need say on this branch of the case is that in our opinion, on the evidence, the question was one for the jury, and that their verdict in favor of the plaintiff is conclusive.

2. The partial release of the sureties is claimed to have been effected by the following facts: After most of the indebtedness now sought to be recovered had become due and payable, plaintiff applied to Forrestal for payment. Forrestal, having no money, requested plaintiff to accept a promissory note. After some negotiations on the subject, plaintiff accepted a negotiable promissory note for $2,500, payable in sixty days, with eight per cent. interest, executed by Forrestal Bros., a copartnership composed of defendant Forrestal and his brother. Plaintiff immediately indorsed, sold, and transferred it to a bank, and obtained the money on it, which he credited on his books to Forrestal's account, which credit appeared on subsequent monthly statements of account rendered by plaintiff to Forrestal, showing the balance due after deducting the credit of $2,500. The record is entirely silent as to the subsequent history or present condition of this note, except that plaintiff's books of account show that, at or about the date of the maturity, he charged it back to Forrestal, by debiting his account with the amount. We shall, however, assume what the record does not show,—that plaintiff, as indorser, had to take up the note. The testimony of Forrestal and of plaintiff is conflicting as to the terms and conditions upon which the note was given and accepted. Forrestal's testimony was that it was given and received as payment, or conditional payment, of part of the book account, without anything being said as to its effect either upon the account or upon the bond; and certainly all of plaintiff's subsequent acts tend strongly to corroborate this. On the other hand, plaintiff (corroborated by his brother) testified that he accepted it on the express condition that it should not extend the time of payment of the account, or affect his remedy on the bond against the sureties. Plaintiff and his brother are quite confused in their testimony as to the purpose for which the note was given. They sometimes speak of it as

having been given "merely as a matter of accommodation, and not as payment;" again, as "collateral or as an accommodation;" and, still again, as being accepted merely "as collateral."

Of course, if it was given and accepted merely as accommodation paper, without any reference to or connection with the account due from Forrestal to plaintiff, it needs no argument to show that it is wholly immaterial what plaintiff did with it, as it could not affect the liability of the sureties on the bond. But it is evident that the witness inaccurately used the word "accommodation" as synonymous with "collateral,"—a meaning which the court itself adopted from the witnesses, in its charge to the jury. But, when brought down to state the exact terms of the agreement, plaintiff testified that Forrestal requested him to accept the note as collateral, and that he accepted it as collateral, and not as payment on the account, but with an express agreement that it should not extend the time of payment of the account, or in any way affect or suspend his remedy against the sureties on the bond. And the tenor of the entire evidence, both direct and circumstantial, conclusively negatives the idea that the note was given merely as accommodation paper, without reference to the account. The only two views which the evidence reasonably tends to support are either that it was taken as a conditional payment, with an implied extension of time of payment of that much of the account until the maturity of the note, or that it was taken merely as collateral security for the account.

In our opinion the evidence would justify the jury in adopting the latter view, which is the one most favorable to the plaintiff. Accepting this to have been the agreement, as we must, in favor of the correctness of the verdict, it is very clear that the mere acceptance of the note as collateral would not release the sureties. But we are of opinion that the subsequent act of the plaintiff in parting with the note, and transferring it to the bank, did have that effect, for the reason that it operated, if not as an absolute payment on the account, at least as a conditional one, which suspended all right of action on that much of the account until the maturity of the note, and until plaintiff, if held liable as indorser, had been compelled to take it up. Whether the transfer of this collateral note, without an express agreement that this might be done, amounted to a wrongful

conversion, it is not necessary to inquire. It is enough that plaintiff, by doing so, had realized the money on the note, and his only liability on it was as indorser, which was contingent on the maker's failure to pay at maturity, and on the holder's taking the steps to charge him as indorser, neither of which contingencies might ever occur. While matters stood thus, the plaintiff had no right of action on the account, except for the remainder after deducting the amount of the note. The effect of this was, on well-recognized principles, to release the sureties *pro tanto*; and, if once released, no subsequent act of plaintiff would revive the liability.

Cause remanded, with directions to the district court to reduce the verdict by the amount of the note, on the basis of crediting on the account $2,500 as of the date of the note,—August 18, 1890.

(Opinion published 57 N. W. Rep. 55.)

---

An application for reargument was denied January 2, 1894, and the following opinion filed:

PER CURIAM. On motion for reargument, our attention is called to the fact that plaintiff furnished the material to Forrestal Bros., who performed the work under James Forrestal's contract with the city. On further examination of the record, we find that this is so, and that we were misled on that point by the briefs of counsel. But this does not at all affect the decision of the case. We did not decide, as counsel seems to suppose, that the sureties were released because of the disposition by plaintiff of collateral securities to which they would have been entitled to be subrogated on payment of the debt. Neither did we hold that the sureties were released by plaintiff's acceptance of the note, especially in view of the fact that in doing so he reserved, as he claims, his right to proceed against the sureties. But what we did hold had that effect was plaintiff's disposing of the note, thereby disabling himself, at least for the time being, from suing the Forrestals on the original debt. The application for a reargument is therefore denied.

(Opinion published 57 N. W. Rep. 228.)